**In re Joseph Henry TASHOF, Wilda P. Tashof, Debtors.**

**Bankruptcy No. 83–A–0626.**

United States Bankruptcy Court,
D. Maryland,
at Rockville.

Aug. 31, 1983.

Richard Gins, Washington, D.C., for debtors-in-possession.

Nelson Cohen, Bethesda, Md., for First Maryland Sav. & Loan, secured creditor.

Roger Frankel, Bethesda, Md., for group of unsecured creditors.

## MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

Before the court is the application of the debtors-in-possession to retain the law firm of Brownstein, Zeidman and Schomer as special counsel to represent Joseph H. Tashof in connection with an SEC investigation. By order of this court of May 3, 1983, the debtors-in-possession were authorized to employ the law firm of Greenbaum & Gins, P.C., under a general retainer. In addition to their experienced bankruptcy counsel, debtors wish to employ a second law firm to continue its representation of Mr. Tashof in connection with an ongoing SEC investiga-

tion. SEC counsel seeks compensation at rates from $65.00 to $150.00 an hour, as more fully set forth in a letter dated June 30, 1983, from Richard S. Kraut, Esquire, to Richard H. Gins, Esquire. A copy of the proposed engagement letter is attached as an Appendix to this Memorandum.

The first two paragraphs of the retainer letter describe the services to be rendered and the potential problem counsel is to manage:

"We have represented Joseph Tashof in connection with an SEC investigation involving his efforts to raise funds in connection with his ownership of certain property on Massachusetts Avenue, Washington, D.C.

The SEC staff advised us, by letter dated June 9, 1983, that they are recommending to the Commission the institution of enforcement action against Mr. Tashof, and advised that Mr. Tashof may submit a statement to the Commission urging that no action be taken. Based upon my experience and knowledge of the facts, I believe the Commission will authorize the filing of an action against Mr. Tashof in Federal district court. Furthermore, based upon my experience, I believe there is a real possibility that the SEC may refer the matter to the Department of Justice for possible criminal prosecution."

Debtors' SEC problems appear to center about Mr. Tashof's efforts to raise money to develop a parcel of property located in the 900 block of Massachusetts Avenue, N.W., Washington, D.C., in the immediate vicinity of the Washington Convention Center. Section III of debtors' A–3 Schedule listing unsecured creditors describes some 40 odd individuals holding notes issued by Mr. Tashof in connection with the Massachusetts Avenue property. The total of the Section III claims is $563,117.00 principal amount. One of the Section III creditors objected to the instant application. The firm of Brownstein, Zeidman and Schomer is listed as an unsecured creditor with a claim of $18,220.67.

The following sections of the Code must be considered in deciding this question:

§ 327. *Employment of professional persons*

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(b) If the trustee is authorized to operate the business of the debtor under section 721 or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.

(c) In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, but may not, while employed by the trustee, represent, in connection with the case, a creditor.

(d) The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate.

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

(f) The trustee may not employ a person that has served as an examiner in the case.

§ 1107. *Rights, powers, and duties of debtor in possession*

(a) Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court pre-

scribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

(b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

■ The fact that Brownstein, Zeidman and Schomer is a creditor does not bar debtors from retaining it. *See Norton Bankruptcy Law and Practice* § 51.03:

§ 51.03. *Employment of Professionals.*

Under Code § 327, the trustee may employ attorneys, accountants, appraisers, auctioneers, or other professional persons only if they are disinterested within the meaning of the Code; however, if the debtor has regularly employed professionals on salary, the trustee may retain or replace them in the operation of the debtor's business. When the debtor in possession functions in the shoes of a trustee, not only may the debtor in possession retain the regularly employed professional persons who were on salary, but the debtor in possession is relieved of the "disinterested" person requirement under Code § 327(a) insofar as these professionals are not "disinterested" solely because of their employment by or representation of the debtor before the commencement of the case. Thus, an attorney or an accountant who was retained or employed by the debtor before the commencement of the case is not disqualified from being considered "disinterested" merely because of prior service to the debtor and may be retained or employed by the debtor in possession if no other disqualifying reason exists.

*See also, In re Heatron, Inc.,* 5 B.R. 703, 6 B.C.D. (CRR) 883 (Bkrtcy.W.D.Mo.1980) (prior representation of debtor, assistance in preparation of petition, and status as one of the ten largest creditors does not require disqualification of attorney that debtor proposed to retain).

■ The issue presented is whether the court should authorize the employment of Brownstein, Zeidman and Schomer to represent the debtor, Joseph Tashof, in connection with a possible criminal prosecution growing out of fund raising activities from the individuals listed on Schedule A–3. These creditors are in the position of once having transferred money to Mr. Tashof and now being called upon to finance the defense of a criminal prosecution in which they might be the complaining witnesses.

Stated differently, the issue is whether the work of the SEC firm assists the debtor-in-possession in carrying out his duties under the Chapter 11 [11 U.S.C. § 327(a)] and whether the employment of the Zeidman firm is in the best interests of the estate [11 U.S.C. § 327(e)]. Lest there be any mistake, the court has no quarrel whatsoever with the law firm retained. The question is simply whether the expense of its representation ought to be borne by the individuals who are reluctantly interested parties in the court as a result of the actions of the debtor, Joseph H. Tashof. One important consideration is that this Chapter 11 proceeding looks towards a liquidating plan; that is, towards the orderly sale of the parcel of real property on Massachusetts Avenue. The filing of the Chapter 11 petition on April 26, 1983, stopped two foreclosure proceedings instituted by two of the secured creditors, the Columbia Realty Venture and the First Maryland Savings & Loan, Inc. The court is not dealing with the retention of a key employee to an ongoing business. But there is no doubt that nearly all creditors would suffer were there a foreclosure.

Little guidance appears in the textbooks and the decisions regarding the factors the bankruptcy court should consider prior to authorizing a debtor-in-possession to hire special counsel. In passing such an order, the court would place counsel in a first priority position under 11 U.S.C. § 507(a)(1)

for the reasonable compensation for the professional services rendered. Indeed, two responsible commentators do not mention this problem at all aside from cautioning the careful practitioner to ensure that the court orders the employment of counsel. *See* Miller & Cook, *A Practical Guide to the Bankruptcy Reform Act*, X. Allowances of Professional Compensation 642.31–.32 ("prior court approval assures that such professionals are engaged in conformity with the standards specified by the Bankruptcy Code, e.g., where appropriate 'disinterested' persons!"); Flowers, *Attorneys' Fees: Handling Bankruptcies Without Getting There Yourself*, 84 W.Va.L.Rev. 669, 672 (1982).

While the court has not been able to research the matter exhaustively, and no memorandum of law has been submitted by any party in interest, the court notes the opinion of Judge Scanland in the case of *In re Pajarito American Indian Art, Inc.*, 11 B.R. 807, 811 (Bkrtcy.Ariz.1981). *Pajarito* was a case under Chapter XI of the Act, and in that case, objections were filed to the discharge of the debtor after the case was converted to a straight bankruptcy. Debtor was indicted and convicted of a crime. Judge Scanland noted, "the estate moneys cannot be used to pay the Debtor's attorney in representing him when he has been charged with a crime." 11 B.R. at 811. No further explanation is given, and perhaps that case can be distinguished from this case in that *Pajarito* was a straight bankruptcy matter. Closer to the present case is *Matter of Colin*, 27 B.R. 87 (Bkrtcy. S.D.N.Y.1983). In *Colin*, the individual debtor-in-possession sought to retain special counsel to represent him in divorce proceedings instituted by the debtor's spouse after the filing of the Chapter 11 petition. Debtor sought to retain counsel for the divorce proceeding and also to advise him concerning various *inter vivos* trusts created for their children. The Creditors' Committee objected, but the court permitted employment of special counsel in the divorce proceedings setting a limit of $25,000.00. The court further permitted the retention for advice on the *inter vivos* trusts, but left open the matter of compensation with re-

spect to the trusts pending an explanation of the impact of the trusts on the Chapter 11 property.

In allowing the retention of counsel at the expense of the estate, the court in *Colin* took judicial notice of the recently passed equitable distribution law in New York. The court explained that the marital property issues should be litigated in state court. The court went on to say:

> "Special counsel would be retained to protect the estate. Demonstration of benefit would be difficult given the defensive nature of the representation. Retention at the outset is preferable."

Even though the Creditors' Committee asserted that Mr. Colin earned $72,000.00 a year, the court found that the retention of counsel was to protect estate property and, therefore, authorized retention. The court went on to say:

> "The Court does perceive that special counsel's services in the divorce proceeding will concern the dissolution of the marriage as well as disposition of property. The latter is within the scope of the retention authorized; the former is not. The Court is cognizant of the fact that distinguishing representation which concerns property and representation concerning other matters will be difficult. Applications for compensation must be detailed and comprehensive. The Court anticipates that hearings on compensation may be long and complex. Nonetheless, the Court is certain that, with proper documentation by applicants, compensation may be awarded for those services which concerned the estate. . . ."

The *Colin* case can also be distinguished from the instant case in that in this case Mr. Tashof and not the estate is being protected in the SEC proceeding. In this liquidating plan, the estate *per se* has no interest in whether or not Mr. Tashof faces criminal charges. Whether the SEC prosecutes Mr. Tashof or whether he may engage in further activities in the securities industry could not matter less to the unsecured creditors. The only thing that the employment of special counsel could produce for

the unsecured creditors is additional expense. Debtors' counsel urges that employment of SEC counsel is necessary in order to take the debtor's mind off the threatened prosecution and to permit him to devote all of his energies to turning the property around and producing a return for the investors. This same argument could be made if the debtor were charged with arson. In considering all the equities, the court does not find that the best interests of the estate would be served by burdening it with the expense of special counsel. Nor, can the court discern, on the status of the record at this time, any duties of the debtor-in-possession that would be assisted by the employment of special counsel. Therefore, the court does not see the fairness in affording administrative priority to the future charges of special counsel hired to assist Mr. Tashof in his role as the target of an SEC investigation. An order will be entered denying the application.

LAW OFFICES

# BROWNSTEIN ZEIDMAN AND SCHOMER

| | | |
|---|---|---|
| PHILIP N. BROWNSTEIN | ANDREW BRANZ | SUITE 900 |
| PHILIP F. ZEIDMAN, P. C. | ANDREW A. CAFFEY | 1025 CONNECTICUT AVENUE, N. W. |
| MORTON W. SCHOMER | SUSAN E. DUVALL | WASHINGTON, D. C. 20036 |
| PERRY C. AUSBROOK | H. BRET LOWELL | TELEPHONE |
| ARTHUR I. CANTOR | KENNETH F. HALL | |
| JOHN F. DIENELT, P. C. | BARRY M. HELLER | 202–457–6500 |
| DONALD A. KAUL, P. C. | WARREN JOSEPHSON | |
| DARYL A. NICKEL | KYLLIKKI KUSMA | |
| KENNETH G. LORE | ROBERT A. SMITH | TELECOPIER |
| PETER J. KLARFELD | TIMOTHY J. ALUISE | 202–457–6573 |
| THOMAS C. EVANS | SHELLEY R. GRANT | |
| BARRY P. ROSENTHAL | LAWRENCE O. SNEAD, III | |
| DAVID J. BUTLER | ANITA K. BLAIR | TWX |
| RONALD A. FEUERSTEIN, P. C. | PAMELA A. RASK | |
| RICHARD S. KRAUT | SCOTT A. STERLING | 710–8229772 |
| SHELDON L. SCHREIBERG | DAVID M. ASTROVE | |
| | PAMELA J. MILLS | |
| OF COUNSEL | LAURENCE E. PLATT | CABLE ADDRESS |
| MELVYN N. KLEIN | ROSEMARY SARKA | CAVEAT-WSH |
| | | WRITER'S DIRECT DIAL NUMBER |

June 30, 1983                    EXHIBIT A                    (202) 457–6535

Richard H. Gins, Esq.
8720 Georgia Avenue
Suite 205
Silver Spring, Maryland 20910

Re:  Joseph Tashof

Dear Mr. Gins:

We have represented Joseph Tashof in connection with an SEC investigation involving his efforts to raise funds in connection with his ownership of certain property on Massachusetts Avenue, Washington, D.C.

The SEC staff advised us, by letter dated June 9, 1983, that they are recommending to the Commission the institution of enforcement action against Mr. Tashof, and advised that Mr. Tashof may submit a statement to the Commission urging that no action be taken. Based upon my experience and knowledge of the facts, I believe the Commission will authorize the filing of an action against Mr. Tashof in Federal district court. Furthermore, based upon my experience, I believe there is a real possibility that the SEC may refer the matter to the Department of Justice for possible criminal prosecution.

Our firm has been listed as a Schedule A–3 creditor on the List of Creditors submitted by Mr. Tashof and his wife in their personal bankruptcy proceedings pending in United States District Court for the District of Maryland. While we believe that continuity of legal representation of Mr. Tashof in the SEC matter and in the possible Department of Justice matter would be desirable for Mr. Tashof with respect to costs, efficiencies and

professional considerations, we cannot incur the cost of such representation ourselves. Accordingly, we request the Bankruptcy Court to authorize our retention and to grant us an administrative priority for attorneys fees and expenses to enable Mr. Tashof to pay us in connection with our continued representation of him in both the SEC and possible Department of Justice matters. We would propose to bill Mr. Tashof at our standard hourly rates, mine being $150 per hour and that of an associate at $65 or $75 per hour.

Should you require any additional information, please call me.

Very truly yours,

/s/ Richard S. Kraut

Richard S. Kraut